Turene LOMBARD and Pueblo School
District # 60, Petitioners

v.

COLORADO OUTDOOR EDUCATION
CENTER, INC, a Colorado Non–Profit
Corporation, and Sanborn Western
Camps, Inc., a Colorado Non–Profit Cor-
poration, d/b/a The Nature Place, Re-
spondents.

No. 07SC166.

Supreme Court of Colorado,
En Banc.

June 30, 2008.

James M. Croshal, Mickey W. Smith, Pueblo, Colorado, Attorneys for Petitioner Turene Lombard.

Jeffrey C. Fleischner, Greenwood Village, Colorado, Attorney for Petitioner Pueblo School District # 60.

Diane Vaksdal Smith, Burg Simpson Eldredge Hersh & Jardine, P.C., Englewood, Colorado, Attorney for Respondent.

Mac Hester, Bachus & Schanker, LLC, Fort Collins, Colorado, Attorney for Amicus Curiae Colorado Trial Lawyers Association.

Jeffrey Clay Reubel, Maureen A. Sweeney, Campbell, Latiolais & Ruebel, P.C., Denver, Colorado, Attorney for Amicus Curiae Colorado Defense Lawyers Association.

Justice MARTINEZ delivered the Opinion of the Court.

Petitioners Turene Lombard and the Pueblo School District # 60 appeal the judgment of the court of appeals in *Lombard v. Colorado Outdoor Education Center, Inc.,* 179 P.3d 16 (Colo.App.2007), which affirmed the trial court's grant of summary judgment for Respondents Colorado Outdoor Education Center, Inc. and Sanborn Western Camps, Inc. (d/b/a The Nature Place) (collectively "Sanborn"). After falling from a ladder in one of Sanborn's lodging units and suffering injuries, Lombard brought suit under Colorado's premises liability statute, section 13–21–115, C.R.S. (2007). The statute allows an invitee to recover for damages caused by a landowner's "unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." § 13–21–115(3)(c)(I). Lombard alleged that the ladder was a danger about which Sanborn knew or should have known because the ladder violated a provision of the Teller County building code. The trial court and the court of appeals disagreed, finding that a violation of the building code was insufficient to establish that Sanborn knew or should have known of a danger. The court of appeals reasoned that the premises liability statute abrogated the common law doctrine of negligence per se and that consequently, the statute could not be satisfied by a showing of constructive notice of the requirements imposed by a statute, ordinance, code, or regulation.

We find that the court of appeals erred in affirming the trial court's grant of summary judgment because Lombard presented sufficient evidence to overcome Sanborn's summary judgment motion. In so holding, we conclude that the premises liability statute allows the plaintiff to recover for damages if (1) the landowner "actually knew or should have known" of a danger on the premises and (2) his action or inaction constituted an "unreasonable failure to exercise reasonable care" to protect the plaintiff from that danger. § 13–21–115(3)(c)(I). With respect to the first element, we hold that the statute's requirement that the landowner "knew or should have known" of the danger can be satisfied by either actual or constructive knowledge. Here, Lombard presented sufficient evidence to overcome summary judgment on the issue of knowledge because, as the builder of the lodging unit, Sanborn had actual or constructive knowledge of the violation of a building code provision that was intended to ensure the safety of those on the premises, such as Lombard. Regarding the second element, we hold that the plaintiff may overcome summary judgment on the issue of the landowner's "unreasonable failure to exercise reasonable care" by demonstrating that the landowner violated a statute or ordinance that was intended to protect the plaintiff from the type of injury she suffered. *See* § 13–21–115(3)(c)(I). Here, Lombard presented evidence, sufficient to overcome summary judgment, that Sanborn violated a building code provision that was intended to protect the health and safety of the public. Accordingly, we reverse the judgment of the court of appeals.

## I. Facts and Procedural History

Lombard, a teacher in Pueblo School District # 60, attended an overnight training session at The Nature Place, a conference facility and resort in Teller County, owned and operated by Sanborn. Lombard spent the night in Unit 25, which was described as a studio or apartment and had a main floor with a kitchenette, bathroom, and sleeping area, and a second floor "loft" containing a mattress and space for reading. The loft was connected to the main floor by a ladder that was nearly vertical and did not have handrails. Descending the ladder after reading in the loft, Lombard missed a step, slipped, fell to the ground, and suffered an injury.

Sanborn constructed Unit 25 between 1981 and 1983, in conjunction with a convention center and other lodging units. Sanborn's then president, Roger Sanborn, acted as the general contractor, although he was not a licensed general contractor. Sanborn's employee, a maintenance man, acted as the project's subcontractor. Roger Sanborn obtained and signed the building permits for the project. Each permit stated that Sanborn agreed to construct the buildings in

compliance with the Teller County building code. The building code required that any access from the ground floor to a loft be by way of a staircase. Consequently, the use of a ladder to access the sleeping loft in Unit 25 was in violation of the building code. In spite of this violation, the building department issued a certificate of occupancy for Unit 25 upon its completion.

Lombard brought suit against Sanborn in February 2002, asserting a claim for violation of the premises liability statute. Having paid Lombard's medical bills and lost wages, Pueblo School District # 60 joined as a plaintiff. Following discovery, both sides moved for summary judgment. In its motion, Sanborn contended that it did not know, nor should it have known, that the ladder was a dangerous condition. Sanborn submitted an affidavit from an employee stating that during the seventeen years between the construction of Unit 25 and Lombard's fall, hundreds of guests had stayed in the unit without any reported incident. Further, the same ladders had been used in another forty-four units for the fifteen to twenty years prior to Lombard's incident without any reports of injury. Furthermore, Sanborn stated that the unit had received a certificate of occupancy by the building department. Thus, Sanborn contended that it had reason to believe the ladders were safe for use by guests.

Lombard countered with affidavits from engineering and architectural experts asserting that the ladder from which Lombard fell was in violation of the Teller County building code that was in effect at the time the unit was built. The experts contended that a certificate of occupancy does not excuse a violation of the building code. Thus, Lombard argued that Sanborn knew or should have known that there was a dangerous condition because the ladder was in violation of the building code and Sanborn was responsible for the construction of Unit 25.

The trial court granted Sanborn's summary judgment motion and denied Lombard's motion, holding that Lombard failed to present evidence that Sanborn knew or should have known of the alleged dangerous condition. On appeal, the court of appeals focused on whether the violation of a building code provision satisfies the "knew or should have known" requirement. The court of appeals described the issue as follows:

> [W]hether a violation of an applicable building code provision on a premises, without more, can constitute a dangerous condition about which the owner actually knew, or should have known, such that the owner is liable under [the premises liability statute] for personal injuries sustained by an invitee. Or, put another way, can negligence per se based on the violation of an applicable building code provision in the construction of a premises, without more, establish liability under [the premises liability statute]?

The court of appeals concluded that it was improper to equate "knew or should have known" with constructive notice because the premises liability statute abrogated the common law doctrine of negligence per se. Thus, the court of appeals held that evidence of the building code violation was insufficient to prove that Sanborn knew or should have known of a dangerous condition. Further, the court of appeals held that Roger Sanborn's signature on the building permits below the agreement to construct in compliance with the building code did not evidence that Sanborn knew or should have known of a danger. Accordingly, the court of appeals affirmed the grant of Sanborn's motion for summary judgment.

We granted certiorari to consider Sanborn's motion for summary judgment and the court of appeals' holding that the premises liability statute abrogated the common law doctrine of negligence per se.[1]

---

1. We granted certiorari on the following issues:
   1. Whether the Colorado Premises Liability Act, § 13–21–115, C.R.S., abrogates the common law principle of negligence per se in the premises liability context.

2. Whether the courts may presume that landowners have knowledge of the particular provisions of building codes, or other similar codes, in a premises liability case.

## II.   The Premises Liability Statute

Our review of an order granting or denying a motion for summary judgment is de novo. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608, 611 (Colo.1998). Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 819 (Colo.2004). Courts grant the non-moving party all favorable inferences that may be drawn from uncontested facts, and resolve any doubt as to whether a triable issue of material fact exists against the moving party. *Id.; Cyprus Amax Minerals Co. v. Lexington Ins. Co.,* 74 P.3d 294, 298 (Colo. 2003).

To properly review the grant of summary judgment in the case before us, we are called upon to interpret Colorado's premises liability statute, section 13–21–115. In construing statutes, our primary duty is to give effect to the intent of the General Assembly. *Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004); *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). We look first to the statute's plain language, and if it is clear and unambiguous on its face, we look no further and apply the statute as it is written. *Vigil,* 103 P.3d at 327. Generally, we afford the words of the statute their ordinary and common meaning and construe the statutory provisions as a whole, giving effect to the entirety of the statute. *Id.* However, if the statutory language is ambiguous, we consider the statute's legislative history, the state of the law prior to its enactment, the problem addressed, and the statutory remedy. *People v. Davis,* 794 P.2d 159, 180 (Colo. 1990). Moreover, "where the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but can only recognize such changes when they are clearly expressed." *Vigil,* 103 P.3d at 327.

The premises liability statute outlines the respective duties that a landowner owes to trespassers, invitees, and licensees and provides that a breach of those duties may result in liability for damages caused. As relevant here, subsection (3) states that "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." § 13–21–115(3)(c)(I).[2] Thus, for an invitee to prevail on a premises liability claim, she must prove: (1) the landowner "actually knew or should have known" of the danger to the invitee and (2) the landowner "unreasonably failed to exercise reasonable care" to protect the invitee from that danger. *See Vigil,* 103 P.3d at 328 n. 11 (quoting *Sofford v. Schindler Elevator Corp.,* 954 F.Supp. 1459, 1462 (D.Colo.1997)).

In reviewing the grant of Sanborn's summary judgment motion, we first consider whether the statutory requirement that the landowner "actually knew or should have known" of the danger is satisfied by evidence that the landowner had constructive knowledge of the danger because the condition violated the local building code. Second, we assess whether the premises liability statute prevents the plaintiff from offering the landowner's violation of a statute or ordinance as evidence of the landowner's "unreasonable failure to exercise reasonable care." In light of these considerations, we conclude that Lombard presented sufficient evidence to overcome Sanborn's summary judgment motion.

### A.   Actually Knew or Should Have Known

The premises liability statute provides that, with respect to an invitee, a landowner must "protect against dangers of which he actually knew or should have known." § 13–21–115(3)(c)(I). The court of appeals concluded that it was improper to equate "should have known" with "constructive notice" or "constructive knowledge." *Lombard,* 179 P.3d at 21–22. The court reasoned that while "actually knew or should have known" is "actual and direct" knowledge, constructive knowledge is "pre-

---

**2.** The parties do not dispute that Lombard was an invitee on Sanborn's property.

sumed." [3] *Id.* Thus, the court of appeals' opinion appears to require a showing of actual knowledge to evidence the landowner should have known of the dangerous condition. This conclusion is entirely contrary to a plain language interpretation of the statute and courts' standard construction of the phrase "should have known."

■■■ The plain language "actually knew or should have known" indicates that the statute is satisfied by evidence of either actual knowledge or a showing that the defendant should have known of the condition. Generally, we presume the disjunctive use of the word "or" marks distinctive categories. *Zab, Inc. v. Berenergy Corp.*, 136 P.3d 252, 255 (Colo.2006); *Armintrout v. People*, 864 P.2d 576, 581 (Colo.1993). Furthermore, when examining a statute's language, we give effect to every word and render none superfluous because we "do not presume that the legislature used language idly and with no intent that meaning should be given to its language." *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 597 (Colo.2005). Thus, we cannot conclude that "should have known" is merely redundant of the phrase "actually knew." Finally, reading "should have known" to require a showing of actual knowledge would nullify the distinction between the duty owed to licensees and that owed to invitees since a landowner's duty to a licensee is to protect against dangers of which he "actually knew." *See* § 13–21–115(3)(b)(I), (II). Therefore, a plain language reading of the statute reveals that "actually knew" and "should have known" are distinctive and separate types of knowledge.

Contrary to the court of appeals' interpretation of "knew or should have known", Colorado courts have consistently held that the phrase "knew or should have known" is satisfied by actual or constructive knowledge, also referred to as the knowledge that one exercising reasonable diligence should have. *See State v. Moldovan*, 842 P.2d 220, 229 (Colo. 1992) (holding that for the purposes of the governmental immunity statute, "a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered"); *Brighton Pharmacy Inc. v. Colo. State Pharmacy Bd.*, 160 P.3d 412, 418 (Colo.App.2007) (holding that to determine whether a person "should have known" certain information, the court applies an objectively reasonable person standard); *Full Moon Saloon, Inc. v. City of Loveland*, 111 P.3d 568, 570 (Colo. App.2005) (noting that if knowledge could have been obtained through the exercise of reasonable care and diligence, constructive knowledge may be inferred); *Morgan v. Bd. of Water Works*, 837 P.2d 300, 303 (Colo.App. 1992) (holding that even where employees did not have actual knowledge of a danger on the premises, they were deemed to have constructive notice if they should have known of the danger through the exercise of ordinary diligence); *see also Amoco Prod. Co. v. United States*, 619 F.2d 1383, 1387–88 (10th Cir.1980) (concluding that one of the means to satisfy a federal statute's "should have known" language is through constructive notice). Indeed, constructive knowledge is defined as *"[k]nowledge that one* using reasonable care or diligence *should have,* and therefore that is attributed by law to a given person."* Black's Law Dictionary* 876 (7th ed.1999) (emphasis added). As the court of appeals noted in *Sulca v. Allstate Insurance Co.*, the "requirement that a plaintiff use due diligence in discovering the relevant circumstances or event imposes an objective standard and does not reward denial or self-induced ignorance." 77 P.3d 897, 900 (Colo. App.2003). Thus, Colorado courts have consistently held that, as a matter of public

---

3. The court of appeals also reasoned that "should have known" cannot be equated with constructive knowledge because the premises liability statute abrogates the doctrine of negligence per se, and therefore the statute is only satisfied by "actual and direct" knowledge rather than "presumed" knowledge of the danger. *Lombard,* 179 P.3d at 22. We reject entirely the court of appeals' conclusion that the doctrine of negligence per se bears any weight on the analysis of whether a landowner "should have known" of a danger. Rather, negligence per se pertains to the defendant's duty and whether that duty was breached. Thus, we discuss below the effect of the negligence per se doctrine on the landowner's statutory duty to exercise reasonable care.

policy and public safety, it is entirely appropriate that the law impute certain knowledge to prevent individuals from denying knowledge or acting in a way so as to remain ignorant. Consequently, we conclude that the premises liability act's requirement that the landowner "actually knew or should have known" requires a showing of actual or constructive knowledge.

At issue here is whether Lombard presented evidence, sufficient to overcome Sanborn's summary judgment motion, that Lombard had actual or constructive notice that the ladder from which Lombard fell constituted a danger. The trial court held that "[w]hether the property was constructed in accordance with the building code is irrelevant unless [Sanborn] knew or should have known of that violation." The trial court is correct insofar as it concluded that the violation of a code is not dispositive of the landowner's knowledge of a danger. Rather, the statute requires that the defendant "protect against dangers of which he actually knew or should have known." Thus, plaintiff must present further evidence to demonstrate that the code contains a provision that was intended to protect against the particular danger allegedly suffered, that the landowner knew or should have known of the provision, and that the landowner knew or should have known of the condition that violated the code's provision.

First, the building code must contain a provision that is intended to protect against the particular danger that the plaintiff allegedly suffered.[4] Thus, for example, the code may state that its provisions establish the minimum standards to safeguard the health, safety, and welfare of a building's occupants. Second, the landowner must know or should know of the particular building code provision that protects against that danger. Third, the landowner must know or should know of the condition constituting the violation. For example, a builder who is subject to the building code is presumed to have constructive notice of the violation if he builds in violation of the code. In contrast, a second owner of the property may not have actual or constructive knowledge that the premises is not in compliance with the building code unless and until some fact puts him on inquiry notice that there may be a code violation that would constitute a danger. *See Singleton v. Collins,* 40 Colo.App. 340, 574 P.2d 882, 882 (1978) (holding that the defendant landowner did not have notice of the danger posed by the placement of handrails on a staircase that was in violation of the building code where the defendant was not the builder of the apartment complex and the property had been approved for occupancy by the building inspector). Thus, with respect to invitees, a landowner may only be liable for dangers of which he actually knew or should have known if he had exercised reasonable care and diligence.

In light of these considerations, we disagree with the trial court's conclusion that Lombard failed to present any evidence that Sanborn knew or should have known of a danger on the premises. In her response to Sanborn's motion for summary judgment, Lombard presented evidence that the 1976 Uniform Building Code was in effect in Teller County when Sanborn built Unit 25. Furthermore, as the builder of these units, Sanborn applied for and received permits to build in Teller County. Each permit contained Roger Sanborn's signature, as the general contractor on the project, below an explicit agreement to build in accordance with the building code. Specifically, the building code provided that access between a ground floor and a loft must be by way of a staircase with certain dimensions. Thus, the use of a ladder in Unit 25 to connect the lower level and the loft was in violation of several building code provisions. Lombard further contended that these provisions were designed to ensure the safety of premises that are open to the public and therefore that the violation of the building code provisions constituted a danger to invitees on the premises. Finally, Lombard's expert affidavits provided that inspections and certificates of occupancy are merely aids toward meeting

---

4. Without proof that the provision is intended to protect against the danger suffered, the knowledge of the building code provision and its violation does not necessarily constitute proof that the landowner knew or should have known of a danger.

an applicable building code; any oversight by building officials did not relieve Sanborn of the responsibility to inspect the premises and ensure compliance with the building code.

In sum, Lombard presented sufficient evidence that the allegedly violated code provisions were intended to protect the health and safety of the public and therefore that their violation constituted a danger; that Sanborn had knowledge of the building code by virtue of acting as the general contractor on the project and having agreed to build in compliance with the code; and that Sanborn knew or should have known of the code violation because it was responsible for building the units and installing the ladder in violation of the building code. Thus, Lombard alleged facts that if true would prove that Sanborn knew or should have known of the danger on the premises. Accordingly, the court of appeals erred in affirming the trial court's grant of summary judgment on the basis that Lombard had failed to offer any proof of Sanborn's knowledge of the danger.

## B. Unreasonable Failure to Exercise Reasonable Care

Having determined that, for the purposes of summary judgment, Lombard presented sufficient evidence to meet the knowledge requirement of the statute, we turn now to the question of whether Lombard presented sufficient evidence to establish a material fact in dispute as to whether Sanborn's conduct constituted an "unreasonable failure to exercise reasonable care." The trial court did not reach this issue because it granted summary judgment based on Sanborn's lack of knowledge of a danger. However, on appeal, the court of appeals incorrectly considered the doctrine of negligence per se when addressing whether Sanborn knew or should have known of a danger on the premises.[5] Because of this confusion in the court of appeals' opinion and our subsequent grant of

certiorari to address this confusion, and because these issues must be considered on remand, we address the question of whether Lombard presented sufficient evidence to demonstrate that Sanborn unreasonably failed to exercise reasonable care by providing a ladder as the only means of access between the lower level and the loft in Unit 25. To decide this issue, we consider whether the provisions of the premises liability statute prevent the plaintiff from offering evidence of the landowner's violation of a statute or ordinance in order to prove the landowner's "unreasonable failure to exercise reasonable care."[6]

Negligence rests upon the premise that a tortfeasor has a legally imposed duty or a standard of conduct to which he must adhere. *Dare v. Sobule,* 674 P.2d 960, 963 (Colo.1984). The underlying principle of the common law doctrine of negligence per se is that legislative enactments such as statutes and ordinances can prescribe the standard of conduct of a reasonable person such that a violation of the legislative enactment constitutes negligence. *See Largo Corp. v. Crespin,* 727 P.2d 1098, 1107 (Colo.1986). Thus, the doctrine serves to conclusively establish the defendant's breach of a legally cognizable duty owed to the plaintiff. *Id.* A party may recover under a claim of negligence per se if it is established that the defendant violated the statutory standard and the violation was the proximate cause of the injuries sustained. *Lyons v. Nasby,* 770 P.2d 1250, 1257 (Colo.1989); *Largo Corp.,* 727 P.2d at 1107. However, the plaintiff must also show that he is a member of the class the statute was intended to protect, and that the injuries he suffered were of the kind the statute was enacted to prevent. *Lyons,* 770 P.2d at 1257; *Largo Corp.,* 727 P.2d at 1108; *see also Iverson v. Solsbery,* 641 P.2d 314, 316 (Colo.App.1982) (finding that pur-

---

5. Specifically, the court of appeals reasoned that Sanborn neither knew nor should have known of a danger because "negligence per se is not a viable theory upon which to establish a breach of a duty in a premises liability case." *Lombard,* 179 P.3d at 22.

6. Because the denial of a summary judgment motion is not appealable, *Manuel v. Fort Collins*

*Newspapers, Inc.,* 631 P.2d 1114, 1116 (Colo. 1981), the denial of Lombard's summary judgment motion is not before us. Therefore, we do not consider whether a landowner's violation of a statute or ordinance conclusively establishes the landowner's "unreasonable failure to exercise reasonable care."

pose of building code was generally to protect public from injuries resulting from substandard or unsafe conditions and therefore plaintiff could not base negligence per se claim on building code violation where injury consisted only of cost incurred for subsequent owner of property to bring premises up to code); *Aetna Cas. & Sur. Co. v. Crissy Fowler Lumber Co.*, 687 P.2d 514, 516 (Colo. App.1984) (holding that building code was intended to protect the plaintiff from the type of injury he suffered and therefore negligence per se instruction should have been given to jury).

The language of the premises liability statute makes clear that a party may no longer bring a negligence per se *claim* against a landowner to recover for damages caused on the premises. The premises liability statute is broad reaching in its scope, providing:

> [i]n *any* civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner shall be liable *only* as provided in subsection (3).

§ 13–21–115(2) (emphasis added). Subsection (3) outlines the respective duties that a landowner owes to trespassers, invitees, and licensees and provides that a breach of those duties may result in liability for damages caused. § 13–21–115(3). We considered subsection (3) in *Vigil* and held that its "express, unambiguous language ... evidences the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property." 103 P.3d at 328. We noted that "the General Assembly indicated its intent to completely occupy the field and supersede the existing law in the area." *Id.* As such, we concluded that "the plain language preempts prior common law theories of liability, and establishes the statute as the sole codification of landowner duties in tort." *Id.; see also Anderson v. Hyland Hills Park & Recreation Dist.*, 119 P.3d 533, 535 (Colo. App.2004), *cert. denied* (Colo. Sept. 12, 2005) (stating that premises liability statute pro-

vides the exclusive remedy against a landowner for injuries sustained on the landowner's property); *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612, 613 (Colo.App. 2003) (same). Thus, it would be entirely inconsistent with the plain language of the statute and the holdings of this court to bypass the statute and allow for the imposition of liability on the basis of a negligence per se claim. Consequently, we conclude that a plaintiff may recover against the landowner pursuant to the statute only and not under any other theory of negligence.

However, in addressing the premises liability statute, it is an entirely separate question whether proof of the landowner's violation of a statute intended for the plaintiff's protection is evidence of the landowner's "unreasonable failure to exercise reasonable care." The General Assembly's choice of the phrase "failure to exercise reasonable care" is instructive insofar as it is a term well rooted in our jurisprudence. Our caselaw provides that reasonable care is measured by what a person of ordinary prudence would or would not do under the same or similar circumstances. *Cubbage v. Leep*, 137 Colo. 286, 289–290, 323 P.2d 1109, 1111 (1958). It is also well established that a person of ordinary prudence would generally follow the law, and thus a court can adopt the standard of reasonable conduct from a statute or ordinance. *See Largo Corp.*, 727 P.2d at 1108; Restatement (Second) of Torts, § 285 (1965) (providing that the standard of conduct of a reasonable person can be determined "by a legislative enactment or administrative regulation which so provides"). Consequently, although the premises liability statute has abrogated certain common law claims and defenses in the premises liability context, we do not find that the General Assembly has clearly expressed its intent to abrogate the common law principle that the violation of a statute is evidence of a failure to exercise due care. *See Vigil*, 103 P.3d at 327 (noting that "where the interaction of common law and statutory law is at issue, we acknowledge and respect the General Assembly's authority to modify or abrogate common law, but can only recognize such changes when they are clearly expressed").

In the absence of guiding legislative intent to the contrary, we conclude that the General Assembly did not intend to preclude a party from arguing that certain statutes and ordinances are relevant to establishing the standard of reasonable care, and thus that the violation of that statute or ordinance is evidence of a failure to exercise reasonable care.

■ The premises liability statute's use of the term "unreasonable" in the phrase "unreasonable failure to exercise reasonable care" does not affect our reading of the statute. As the court of appeals noted in the case at hand, the phrase "unreasonable failure to exercise reasonable care" appears to be redundant insofar as the failure to exercise reasonable care is by definition unreasonable. *Lombard*, 179 P.3d at 21. Indeed, we would have a difficult time explaining in this opinion, let alone providing guidance to a jury, as to what type of conduct is unreasonably unreasonable or reasonably unreasonable.[7] Thus, we conclude that the premises liability statute merely requires proof that the defendant failed to exercise reasonable care.[8]

[25, 26] In sum, we hold that with respect to the statutory requirement regarding the landowner's failure to exercise reasonable care, the plaintiff may overcome the landowner's summary judgment motion by presenting evidence that the landowner violated a statute or ordinance. By necessity, this holding incorporates the common law's requirement that the plaintiff show he is a member of the class the statute was intended to protect, and that the injuries he suffered were of the kind the statute was enacted to prevent.[9] *See Lyons*, 770 P.2d at 1257; *Largo Corp.*, 727 P.2d at 1108. However, although such evidence may be sufficient to overcome summary judgment on the issue of the landowner's failure to exercise reasonable

care, it is separate and independent from the question of whether the plaintiff presented evidence regarding the remaining statutory requirements, namely the landowner's actual or constructive knowledge of the danger, proximate cause, and damages.

■ Reviewing Lombard's response to Sanborn's summary judgment motion, we find that Lombard presented evidence, sufficient to overcome summary judgment, that Sanborn failed to exercise reasonable care. Lombard proffered evidence that the Uniform Building Code had been adopted by Teller County and was in effect at the time that Sanborn constructed the units that provided ladders as the only means of access between the main floor and the loft. Further, section 30–28–209, C.R.S. (2007), provides that upon the county's adoption of the building code, "[i]t is unlawful to erect, construct, reconstruct, or alter any building or structure in a manner that results in a violation of any regulation in, or of any provisions of, the area building code...." Lombard's expert affidavits supported the allegation that the use of a ladder violated the building code. Finally, Lombard contended that the building code provisions were intended to protect the health and safety of the public. As an invitee at Sanborn's conference center and lodge, Lombard was a member of the public that the building code was designed to protect. Thus, Lombard presented evidence that Sanborn failed to exercise reasonable care through its failure to abide by a building code provision intended to protect plaintiffs such as Lombard from the type of injury she suffered.

## III. Conclusion

Because Lombard presented evidence, sufficient to overcome Sanborn's summary judg-

7. In drafting the jury instructions for the premises liability statute, the Colorado Supreme Court committee on civil jury instructions came to a similar conclusion and stated that "there was no meaningful difference between a failure to exercise reasonable care and an unreasonable failure to exercise reasonable care." CJI–Civ. 4th 12:3 n. 12 (2008).

8. Our review of the legislative hearings on HB90–1107, which added the word "unreason-

able" to the statute, did not reveal any legislative intent to require more than a showing that the landowner failed to exercise reasonable care.

9. If the plaintiff cannot meet these threshold requirements, the statute does not properly constitute the applicable standard of reasonable care and the violation of the statute will not have any bearing on whether the defendant failed to exercise due care.

ment motion, that she suffered damages caused by Sanborn's failure to exercise reasonable care to protect against dangers of which he actually knew or should have known, we reverse the judgment of the court of appeals with instructions to remand for further proceedings consistent with this opinion.