**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 29, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

YVONNE CLEMMONS;
LUTHER CLEMMONS,

      Plaintiffs-Appellants,

v.

FC STAPLETON II, LLC,

      Defendant-Appellee.

No. 11-1119
(D.C. No. 1:09-CV-00710-MSK-MJW)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

After she tripped and fell on an uneven concrete slab sidewalk, Yvonne Clemmons and her husband, Luther Clemmons sued defendant FC Stapleton II, LLC,[1] asserting negligence, premises liability, and loss of consortium claims.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Considerable confusion prevailed in the district court about the identity of the appropriate landowner defendant in this case. *See, e.g.*, Aplt. App., Vol. I at

(continued...)

The district court granted summary judgment to FC Stapleton on the ground that it had no notice of the defective sidewalk and denied plaintiffs' motion for reconsideration.

In this appeal, plaintiffs challenge the grant of summary judgment on the premises liability claim. Because we agree with plaintiffs that genuine issues of material fact remain concerning whether FC Stapleton was on constructive notice of a dangerous condition that caused Ms. Clemmons' injuries, we reverse and remand for further proceedings.

## BACKGROUND

The accident occurred on May 25, 2007, when Ms. Clemmons tripped and fell on the sidewalk in front of EB Games at the Quebec Square shopping center, resulting in her injuries. As she described the accident, "I was walking along, and

[1](...continued)
35-36 & n.4, 45-46, 48-52, 78-79. The district court substituted FC Stapleton for the original defendant in the case, "Forest City Commercial Management Inc. DBA FC Stapleton II, LLC," *see id.* at 9 (bolding & capitalization omitted). It then entered summary judgment in favor of FC Stapleton, *see id.* at 95, and later treated FC Stapleton as the appropriate defendant in its opinion and order denying the Clemmons' motion for reconsideration, *see id.* at 135-40. Although FC Stapleton has appeared and filed an appellee's brief in this appeal, it has also notified us, as it did the district court, that "[t]he proper landowner in this case is [a related entity,] Quebec Square SPE, LLC." Aplee. Br. at 3 n.1.

FC Stapleton does not seek dismissal of either the case or this appeal on the ground that it is not the appropriate party to be sued. Because FC Stapleton was the party of record in the district court and is the party of record in this appeal, we will treat it as the appropriate party for purposes of this disposition. The parties remain free to seek substitution of the appropriate party on remand.

my foot just came in contact with the rise of the sidewalk, and I fell forward." Aplt. App., Vol. II at 189 (depo. p. 53). She estimated the rise in the sidewalk over which she tripped was an inch and a half to two inches high.

**The Summary Judgment Evidence**

In response to FC Stapleton's motion for summary judgment, plaintiffs presented both lay and expert testimony and photographic evidence concerning the condition of the sidewalk where Ms. Clemmons fell. Mr. Clemmons, who had some experience in the construction industry, returned to the location on the following day and took photographs of the sidewalk. He estimated that it would have taken "[p]robably six months or a year" for the sidewalk to settle, resulting in the "approximately two [or] two and a half [inch]" rise between slabs that he observed. *Id.* at 182 (depo. p. 13); 183 (depo. p. 44).

On the date of the incident, Karla Maria Allen, Ms. Clemmons' daughter, took date-stamped photographs of the sidewalk where Ms. Clemmons fell. The photographs were submitted as evidence. She estimated that "the elevation between the two adjoining sidewalk slabs where my mother . . . tripped and fell was more than one inch in height." *Id.* at 202.

An expert affidavit came from Ruperto Esquibel, who identified himself as "an expert in concrete sidewalks, walkways, curbs, driveways, and gutters." *Id.* at 210. Having reviewed photographs of the area where Ms. Clemmons fell, which were submitted to the court with his affidavit, he opined that:

a) There was a defect in the concrete slab prior to the date of the accident which caused Yvonne Clemmons to trip and fall.

b) The probable cause of the defect was settling of the concrete slab due to inadequate and/or defective compaction prior to pouring the concrete.

c) The probable cause of the defect was also defective workmanship and/or installation.

d) *This defective condition appeared to have developed over a period of three months or more.*

e) The best way to have remedied the defective sidewalk was to tear out the sunken section of the defective sidewalk and to completely replace [it] with new concrete.

f) . . . [T]he defect created a dangerous and hazardous condition for pedestrians on the sidewalk.

*Id.* at 211 (emphasis added).

For its part, FC Stapleton presented the affidavit of E. Kemel Blue, Jr., Vice President and General Manager for Forest City Commercial Management, Inc. Mr. Blue stated that prior to Ms. Clemmons' trip and fall, "FC Stapleton had not received any complaints or concerns regarding this particular sidewalk outside of EB Games." *Id.*, Vol. I at 144. Mr. Blue also noted that

> FC Stapleton employs contract security guards who patrol Quebec Square each night to check that all business doors are locked. If guards see any issues requiring maintenance or hazards that could present a danger to patrons, they are instructed to provide notice to FC Stapleton. Those security guards have not reported any

-4-

complaints or concerns regarding uneven sections of concrete on this particular sidewalk to FC Stapleton, including with regard to the area in front of EB Games.

*Id.*

Finally, Mr. Blue noted that pursuant to FC Stapleton's routine inspection procedure, its maintenance personnel "conducted a property inspection between May 1, 2007 and May 5, 2007 which revealed no issues with the subject sidewalk near EB Games." *Id.* at 145. Mr. Blue attached a copy of the inspection report to his affidavit.

FC Stapleton also presented a deposition excerpt from Manuel Moscato, a Maintenance Supervisor/Operations Manager for Forest City Commercial Management, Inc., who stated that he had conducted weekly inspections of the area in front of EB Games, but had never noticed any problems there even after Ms. Clemmons tripped and fell. Mr. Blue filed a supplemental affidavit in which he stated that FC Stapleton did not receive any notice that it was in violation of the Denver Municipal Code with respect to the sidewalk where Ms. Clemmons had her accident.[2]

---

[2]    Plaintiffs had argued that the height of the sidewalk defect violated Denver's Revised Municipal Code, constituting constructive notice per se to FC Stapleton. They do not renew this argument on appeal.

-5-

**The Summary Judgment Ruling**

On summary judgment, the district court first ruled that plaintiffs could not maintain a common-law negligence action, because Colorado's premises liability statute had abrogated the common law of landowner duties. Plaintiffs do not dispute this disposition of their negligence claim.

The district court next turned to plaintiffs' ability to prove a substantive claim under the premises liability statute. Under this statute, it noted, FC Stapleton would be liable for any "unreasonable failure to exercise reasonable care to protect [an invitee like Ms. Clemmons] against dangers of which [it] actually knew or should have known." Colo. Rev. Stat. § 13-21-115(3)(c)(I). The district court concluded that plaintiffs had "not come forward with sufficient evidence to create a triable issue of fact with regard to whether FC Stapleton had [actual or constructive] notice of the sidewalk's dangerous condition." Aplt. App., Vol. I at 88-89. After surveying plaintiffs' evidence, it opined that "the fact that Mr. Clemmons, Ms. Clemmons, their daughter, or Mr. Esquibel examined the premises <u>after</u> the incident and ascertained a defect does not amount to proof that <u>FC Stapleton</u> had actual or constructive knowledge of the defect <u>prior to</u> the accident." *Id.* at 89. Therefore, plaintiffs could not "establish their claim of statutory premises liability." *Id.* at 93.

-6-

**Plaintiffs' Motion for Reconsideration**

Plaintiffs subsequently filed their motion for reconsideration or motion to alter or amend the district court's judgment pursuant to Fed. R. Civ. P. 59(e). They argued, among other things, that

> [s]ince the defect in the case at bar existed for three months or more prior to the incident [according to Mr. Esquibel's affidavit] and the defective condition of the sidewalk was in front of EB Games store, an area traversed by shoppers, a jury question has arisen as to whether the defect should have been seen by the Defendant Stapleton by and through its agents, servants and/or employees prior to . . . Yvonne Clemmons' trip and fall May 25, 2007.

Aplt. App., Vol. I at 99.

Plaintiffs further argued that given the regular inspections FC Stapleton and its employees conducted of the area where Ms. Clemmons fell, "the jury must decide whether Defendant Stapleton looked but did not see the defective condition prior to the incident" and was therefore on constructive notice of it. *Id.* at 101 (internal quotation marks omitted). The district court denied the motion, reasoning that plaintiffs had not previously relied on FC Stapleton's inspections to establish constructive notice, and that in any event, the combination of Mr. Esquibel's expert opinion and the inspection reports was insufficient to establish constructive notice. The district court reasoned as follows:

> The Plaintiffs' expert opines that "this defective condition appeared to have developed over a period of three months or more." The curious word here is "developed." The Plaintiffs' expert is not stating that a dangerous condition "existed" for three months or more, and the use of the term "developed" suggests that the dangerous condition

of the sidewalk evolved over a three month period – *i.e.* going from a state in which the sidewalk segment began as level, progressively becoming slightly elevated, and eventually becoming the dangerously elevated condition that Ms. Clemmons encountered. The expert's opinion does not reveal on what date he believes the sidewalk defect became a condition that was both dangerous and sufficiently conspicuous such that FC Stapleton's inspectors should have taken notice of it.

*Id.* at 138-39.

This appeal followed.

## ANALYSIS

### Standard of Review

"We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party." *McCarty v. Gilchrist*, 646 F.3d 1281, 1284 (10th Cir. 2011). "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* at 1284-85. When applying this standard, we draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *Koch v. Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). We review the district court's denial of a Rule 59 motion for reconsideration for an abuse of discretion. *Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir.), *cert. denied*, 131 S. Ct. 163 (2010).

In a case founded on diversity of citizenship, we apply the substantive law of the forum state. *Haberman v. Hartford Ins. Grp.*, 443 F.3d 1257, 1264 (10th Cir. 2006). In this case, Colorado is the forum state. We therefore apply

Colorado law in examining the district court's grant of summary judgment. *See State Farm Mut. Auto. Ins. Co. v. Fisher*, 618 F.3d 1103, 1106 (10th Cir. 2010).

**Constructive Notice**

Colorado's Premises Liability Statute makes a landowner liable to an invitee "for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Colo. Rev. Stat. § 13-21-115(3)(c)(I). The principal issue in this appeal is whether FC Stapleton "actually knew or should have known" of the defective sidewalk condition that allegedly caused Ms. Clemmons' injuries.

"[T]he statute's requirement that the landowner 'knew or should have known' of the danger can be satisfied by either actual or constructive knowledge." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 568 (Colo. 2008). It is enough to establish that the landowner should have known of the condition; actual knowledge is not required. *Id.* at 571. Under Colorado law, "constructive knowledge" is "knowledge that one exercising reasonable diligence should have." *Id.*

"[A] dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered." *Id.* (quotation omitted). "[A]s a matter of public policy and public safety, it is entirely appropriate that the

-9-

law impute certain knowledge to prevent individuals from denying knowledge or acting in a way so as to remain ignorant." *Id.* at 571-72.

In applying Colorado law relative to constructive notice of a defective condition, we find persuasive the factually-similar case of *Bodeman v. Shutto Super Markets, Inc.*, 593 P.2d 700 (Colo. 1979). In that case the plaintiff, an elderly woman, "was injured when the shopping cart which she was pushing overturned on a sloped asphalt ramp leading from the sidewalk in front of [a] grocery store to the parking lot." *Id.* at 701. There was a hole in the ramp four inches wide and two inches deep at the point where the cart overturned. The plaintiff sued under common-law negligence principles, which relied on a definition of constructive knowledge of a dangerous condition essentially indistinguishable from that subsequently given by the Colorado courts to constructive knowledge under the Premises Liability Statute:

> Before there can be liability for injuries resulting from a dangerous condition, it must be shown . . . that the defendant had constructive knowledge of the condition and failed to correct it ([*i.e.*], that the condition had existed for such a period of time that the defendant, in the exercise of due care, could have and should have known of it).

*Id.* (alteration omitted) (internal quotation marks omitted).[3]

---

[3] FC Stapleton argues that plaintiffs' reliance on *Bodeman* is misplaced because the case involves a claim of simple negligence and predates the passage of the Premises Liability Statute. In light of the indistinguishable definition of constructive knowledge applied by *Bodeman* and Colorado courts interpreting the Premises Liability Statute, we find FC Stapleton's attempt to distinguish

(continued...)

The Colorado Supreme Court granted certiorari in *Bodeman* after the Colorado Court of Appeals overturned a jury verdict in favor of the plaintiff. The Court of Appeals had reasoned that (1) she had failed to show that the defendant had actual knowledge of the hole and (2) as to constructive knowledge, she had presented no evidence concerning how long the hole had been there before the accident. The Colorado Supreme Court sided with the dissent in the Colorado Court of Appeals' decision, which had pointed out that a hole like the one in question "*does not develop* suddenly" and that the jury could draw an inference that it had existed for a sufficient period of time to put the defendant on notice that it needed to repair it or warn customers of it. *Id.* (emphasis added). The Court stated:

> This is not a case in which the transitory nature of the defect creates a grave doubt as to whether the defendant could, in the exercise of reasonable caution, have discovered it, or as to whether the defect existed at all. As a matter of law, the evidence relating to the hole in the asphalt ramp, the dangerous condition which caused plaintiff's injuries, created an issue as to whether [the defendant] had constructive notice of the existence of the hole.

*Id.* at 702 (citations omitted).

Similarly, in this case, a reasonable jury could infer from the evidence that the uneven sidewalk that allegedly caused Ms. Clemmons' injuries had existed for such a period of time that FC Stapleton should reasonably have become aware of

[3](...continued)
*Bodeman* unpersuasive.

-11-

it before the accident.  Although none of plaintiffs' witnesses testified directly as to the exact period of time the defect Ms. Clemmons encountered was in existence, they estimated that it had developed over a period of months.  Given the reasoning in *Bodeman*, Mr. Esquibel's use of the word "developed" rather than the word "existed" is not inconsistent with Colorado case law concerning constructive notice of a danger.  A reasonable jury could infer that this was not a defect that "develop[ed] suddenly" before FC Stapleton had a chance to become aware of it.  *Id.* at 701.

We consider briefly two additional points raised by FC Stapleton.  First, it argues that the "look but not see doctrine," advanced in plaintiff's motion for reconsideration, has no place in a premises liability case.  Aplee. Br. at 13.  We need not decide, however, whether plaintiffs could use FC Stapleton's own inspections to prove that FC Stapleton should have been on notice of the defect.  Under Colorado's objective standard, the issue was whether the defect had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, the condition and its dangerous character should have been discovered.  Under this standard FC Stapleton could have been on constructive notice even if it never conducted weekly or monthly inspections.

Although FC Stapleton provided evidence that it conducted regular inspections and that its employees had not noticed the defective sidewalk in an inspection conducted three weeks before the accident, this only demonstrates the

-12-

existence of a factual dispute concerning when the defect existed and whether FC Stapleton should have been aware of it. FC Stapleton's evidence is countered by plaintiffs' evidence that the defect did exist and should have been noticed. Such material fact disputes, which may implicate issues of credibility, cannot be resolved on summary judgment but must ultimately be resolved by the trier of fact.

Second, FC Stapleton argues that it did exercise reasonable care to protect against dangers on the sidewalk. It refers to its weekly and monthly inspections, none of which "revealed a dangerous condition on the sidewalk where Ms. Clemmons fell." *Id.* at 15. But this is merely another way of attempting to resolve the material factual dispute in this case by way of summary judgment. While this is evidence of reasonable care, it may still be the case that the inspection program failed to identify a hazard that was obvious.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings in accordance with this order and judgment.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge

-13-