24CA1468 Peo in Interest of West 10-24-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1468
Adams County District Court No. 24MH343
Honorable Sara Price, Magistrate

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Hilary West,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 24, 2024

---

Donna Fegler Daiss, County Attorney, Mellissa Sager, Assistant County
Attorney, Brighton, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1 Hilary A. West appeals a magistrate's order authorizing her certification for short-term mental health treatment and involuntarily administered medication. We affirm.

## I. Background

¶ 2 West was admitted to the inpatient psychiatric unit at UCHealth University of Colorado Hospital after she went to the emergency room to report that she was sexually assaulted. She exhibited psychotic symptoms, including paranoid delusions and disorganized speech and thoughts, and was diagnosed with schizoaffective disorder bipolar type. West was placed on a seventy-two-hour emergency mental health hold.

¶ 3 Pursuant to section 27-65-109, C.R.S. 2024, Dr. Alec Aaronson, West's treating psychiatrist, sought an order authorizing West's certification for short-term mental health treatment. Through the Adams County Attorney, Dr. Aaronson also requested an order authorizing the hospital to administer involuntary medications to West. Following a hearing, the magistrate granted the certification for short-term treatment for a period not to exceed three months. The magistrate found that, as a result of her mental illness, West is gravely disabled. The magistrate also found that the

county attorney had met its burden under *People v. Medina*, 705 P.2d 961 (Colo. 1985), to prove the need for the involuntary administration of antipsychotic medications, namely, aripiprazole (Abilify), haloperidol (Haldol), olanzapine (Zyprexa), paliperidone (Invega), quetiapine (Seroquel), risperidone (Risperdal); benzodiazepines medications, including clonazepam (Klonopin) and diazepam (Valium); and medications to manage side effects, including benztropine (Cogentin), diphenhydramine (Benadryl), and propranolol (Inderal).  The magistrate authorized this broad list of possible medications "to accommodate variable responses to given medication combinations."

¶ 4     West appeals the magistrate's order.

## II.    Legal Principles and Standard of Review

¶ 5     As applicable here, to authorize short-term mental health treatment, a court must find by clear and convincing evidence that the patient has a mental health disorder and, as a result, is a danger to herself or others or is gravely disabled.  *People in Interest of Ramsey*, 2023 COA 95, ¶ 25; §§ 27-65-109(1)(a), 27-65-113(1), C.R.S. 2024.

¶ 6 An order authorizing the involuntary administration of medications must likewise be supported by clear and convincing evidence. *Ramsey*, ¶ 39; *Medina*, 705 P.2d at 971. A court may authorize the involuntary administration of medication if the requesting party establishes each of the following elements: (1) the person is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to herself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the person in refusing treatment. *Medina*, 705 P.2d at 973.

¶ 7 Both an order of short-term certification and an order authorizing the involuntary administration of medications present mixed questions of fact and law. We defer to the court's factual findings if there is evidence supporting them, but we review the court's legal conclusions de novo. *People in Interest of Strodtman*, 293 P.3d 123, 131 (Colo. App. 2011). We must determine whether

the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the court's order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. The resolution of testimonial conflicts and determinations of witness credibility are solely within the province of the fact finder. *Ramsey*, ¶ 23. Where there is record support for the court's findings and conclusions, we may not substitute our judgment for that of the district court. *Id.*

## III.   Discussion

¶ 8    West contends that the magistrate erred by determining that sufficient evidence supported the requirements for both short-term certification and the involuntary administration of medication. As to the short-term certification, she asserts only that the evidence was insufficient to support a finding that she is gravely disabled or a danger to herself or others. And as to the involuntary administration of medications, she asserts only that insufficient evidence supported the first and second *Medina* elements. We discern no error.

## A.   Gravely Disabled

¶ 9    "Gravely disabled" means that, due to a mental health disorder, a person is incapable of making informed decisions about

or providing for their essential needs without significant supervision and assistance from other people. § 27-65-102(17), C.R.S. 2024. As a result, such a person "is at risk of substantial bodily harm, dangerous worsening of any concomitant serious physical illness, significant psychiatric deterioration, or mismanagement of the person's essential needs that could result in substantial bodily harm." *Id.*

¶ 10    A person is "gravely disabled" if they are "unable to take care of basic personal needs." *People v. Taylor*, 618 P.2d 1127, 1134 (Colo. 1980). Basic personal needs means "those fundamental necessities of human existence, such as food, shelter, clothing, and medical care, which an individual must obtain and maintain in order to live safely." *Id.*

¶ 11    Bearing these standards in mind, we conclude that the evidence supports the magistrate's determination that West is gravely disabled.

¶ 12    At the hearing, Dr. Aaronson, provided expert opinion testimony that West is gravely disabled as a result of her mental illness. He opined that her psychotic symptoms are "quite severe" and "limit[] her ability to . . . do the basics of taking care of herself."

Of particular concern to Dr. Aaronson was the fact that, notwithstanding available "resources to obtain housing," West's paranoid delusions and thought disorganization impaired her ability to obtain basic shelter for herself. Consequently, Dr. Aaronson opined, West is "being placed in extremely vulnerable positions in the community" with the potential for assaults and medical issues that come with a lack of shelter and other basic necessities. Indeed, as Dr. Aaronson noted, West came to the emergency room to report that she had been sexually assaulted.

¶ 13     This testimony supports the magistrate's finding that West is gravely disabled. Nonetheless, West asserts, her testimony established that she could secure immediate housing, and Dr. Aaronson's testimony established that resources are available to assist her in doing so. Be that as it may, Dr. Aaronson opined that West was unable to obtain basic shelter *despite* available resources. Further, the magistrate placed greater weight on Dr. Aaronson's testimony than West's, and we are not free to reweigh the evidence. *See Ramsey*, ¶ 23.

## B.	The First *Medina* Element

¶ 14	Because the record supports it, we discern no error in the magistrate's determination that West is not competent to effectively participate in the relevant treatment decision. Dr. Aaronson testified that West's "psychotic symptoms [are] severe enough that she's not able to participate in these decisions." He further testified that "she has very little insight" into her mental illness or mental health symptoms and is unable to "participate in a risk-benefit discussion about antipsychotic medication and why they may be beneficial for her." Instead, the doctor testified, "She's very insistent that Adderall is the only medication that works for her, for both her mental and medical symptoms, despite . . . education that that's not the case."

¶ 15	On this record, we will not disturb the magistrate's finding that West is not competent to effectively participate in the decision of whether the requested medications are needed. We are not persuaded otherwise by West's assertion that her conflicting testimony demonstrates the contrary. As noted, the resolution of such conflicts and determinations of witness credibility are solely within the province of the fact finder. *Id.*

## C. The Second *Medina* Element

¶ 16    The second *Medina* element requires a showing that the patient is in danger of either a significant and likely long-term deterioration of her mental condition or of causing harm to herself or others. *Medina*, 705 P.2d at 973. Here, the magistrate's order was based on the deterioration component of this *Medina* element.

¶ 17    Dr. Aaronson testified that the requested medications were necessary to prevent a significant and likely long-term deterioration in West's mental condition. He noted that, in the approximately two weeks since he initially saw her in the emergency department to the date of the hearing, West had decompensated and was more paranoid and afraid, "less willing to engage or talk about [the] risk [and] benefits of these medications," and less willing to engage in education around her mental health symptoms.

¶ 18    Although West testified that she did not think she would suffer significant or likely long-term deterioration if she didn't take the requested medications, the magistrate was persuaded by Dr. Aaronson's testimony and "assign[ed] more credibility to [his] professional testimony and professional expert opinion" than to

West's testimony. We may not disregard this resolution of conflicting testimony. *Ramsey*, ¶ 23.

¶ 19 To the extent that West relies on an assertion that the testimony does not establish that she poses a danger to herself or others, we need not resolve this question because the second *Medina* element is phrased in the disjunctive and the record supports the magistrate's determination that the medication was necessary to prevent significant and likely long-term deterioration in West's mental condition. *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.,* 187 P.3d 565, 571 (Colo. 2008) ("Generally, we presume the disjunctive use of the word 'or' marks distinctive categories.").

¶ 20 Because they are uncontested, we do not address the third and fourth *Medina* elements.

## IV. Disposition

¶ 21 For the reasons stated, the order is affirmed.

JUDGE TOW and JUDGE PAWAR concur.