25CA1885 Peo in Interest of Kaufman 11-26-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1885
Jefferson County District Court No. 25MH284
Honorable Bryce Allen, Magistrate

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Frances Kaufman,

Respondent-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE FOX
Brown and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 26, 2025

---

Kimberly Sorrells, County Attorney, Jennifer Mullenbach, Deputy County Attorney, Golden, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1    Respondent, Frances Kaufman, appeals a magistrate's order authorizing (1) her certification for short-term mental health treatment at Porter Adventist Hospital (the hospital) and (2) the involuntarily administration of medication. We affirm.

I.    Background

¶ 2    In September 2025, bystanders observed Kaufman walking down the middle of Colfax Avenue in Lakewood. She appeared to be responding to internal stimuli and acting erratically. Bystanders called 911, and first responders transported Kaufman to the hospital for evaluation. At the hospital, Kaufman was placed on a seventy-two-hour emergency mental health hold.

¶ 3    Kaufman was diagnosed with schizoaffective disorder, bipolar type, and she presented with symptoms that included labile mood, pressured speech, disorganized thought process, hallucinations, and paranoid delusions. She had over ten prior inpatient hospitalizations, including three in the past two years. Based on this information, Kaufman's treating psychiatrist, Dr. Karina Drake, sought an order authorizing Kaufman's certification for short-term mental health treatment, alleging that Kaufman was a danger to herself and gravely disabled. At Dr. Drake's request, the People

1

also moved for an order to involuntarily medicate Kaufman with antipsychotics, mood stabilizers, a benzodiazepine, and medications to treat side effects.

¶ 4     A magistrate held a hearing on the short-term certification and the motion for involuntary medication administration, at which Dr. Drake and Kaufman testified. After hearing the evidence, the magistrate granted the certification for short-term treatment, finding that Kaufman was a danger to herself and gravely disabled. The magistrate also found that the People had established all four elements for the involuntary administration of medication articulated in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), and granted the request to involuntarily medicate Kaufman with (1) Invega (also known as paliperidone), (2) Zyprexa (also known as olanzapine), and (3) Depakote (also known as valproic acid).

## II.    Discussion

¶ 5     Kaufman contends that the magistrate erred by determining that sufficient evidence supported the requirements for short-term certification and the involuntary administration of medication. We disagree.

## A. Standard of Review

¶ 6 When a patient challenges the sufficiency of the evidence, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order. *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. As the fact finder, the magistrate determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *People in Interest of R.C.*, 2019 COA 99M, ¶ 7. We must defer to the magistrate's factual findings if they have record support, but we review its legal conclusions de novo. *R.K.L.*, ¶ 13.

## B. Short-Term Certification

¶ 7 Kaufman asserts that the magistrate erred by granting the request for short-term certification because she was not a danger to herself or gravely disabled. We are not persuaded.

¶ 8 To authorize short-term certification for mental health treatment, a magistrate must find that the patient has a mental health disorder and, as a result, is (1) gravely disabled; (2) a danger to herself; or (3) a danger to others. *People in Interest of Ramsey*, 2023 COA 95, ¶ 25; § 27-65-109(1)(a), C.R.S. 2025. A person is a

3

danger to herself when the person "poses a substantial risk of physical harm to the person's self as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm to the person's self."  § 27-65-102(10)(a), C.R.S. 2025.

¶ 9      The magistrate found that Kaufman was a danger to herself, relying on the evidence that she had "wander[ed] into traffic" and demonstrated "poor judgment" by "standing in the middle of a very busy road in the Denver metro area."  The record supports the magistrate's finding.  Dr. Drake opined that Kaufman was a danger to herself because "her mania and psychosis ha[d] caused her to have such poor judgment that she does things like stand[] in the middle of an extremely busy road."  For her part, Kaufman admitted to standing in middle of the road, and when asked about it, she could not explain her actions, except to say that she had to leave her apartment because it was "infected with the bugs from COVID."

¶ 10      On appeal, Kaufman argues that the magistrate erred by finding that she is a danger to herself because the evidence shows that she had "drastically improved without medications" at the hospital and therefore "it is reasonable to assume that [this] episode was an isolated incident."  We reject Kaufman's argument because

it would require us to reweigh the evidence and substitute our judgment for that of the magistrate, which we cannot do. *See People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57 (noting that, if ample evidence supports the decision, a reviewing court cannot substitute its judgment for that of the district court).

¶ 11    In any event, the record belies Kaufman's argument. Kaufman directs us to testimony that she started emergency medication after she became aggressive with staff and that while on medication, her symptoms improved. But Dr. Drake said that, when the emergency period ended, Kaufman refused medication and her condition began to deteriorate. In other words, contrary to Kaufman's argument, the record does not show that she improved without medication; in fact, it shows the opposite. Finally, because the record shows that Kaufman had a long history of hospitalizations for her mental health condition, there is nothing in the record to support her position that this event was "isolated."

¶ 12    Therefore, viewed in the light most favorable to the People, we conclude that the evidence was sufficient to establish that Kaufman was a danger to herself as defined in section 27-65-102(10)(a). *See People v. Stevens*, 761 P.2d 768, 775 (Colo. 1988).

¶ 13    Finally, because the statute requires a showing of grave disability *or* dangerousness, § 27-65-109(1)(a), we need not reach the issue of whether Kaufman was also gravely disabled.  *See Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008) ("Generally, we presume the disjunctive use of the word 'or' marks distinctive categories.").

### C.    Involuntary Medication Administration

¶ 14    Kaufman argues that the magistrate erred by granting the request to involuntarily medicate her because the People did not establish the fourth *Medina* element.  We are not persuaded.

¶ 15    A magistrate may authorize the involuntary administration of medication to a patient if the petitioning party establishes, by clear and convincing evidence, that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the person's mental health condition or to prevent the likelihood of the patient causing serious harm to herself or others in the institution; (3) a less intrusive treatment alternative is not available; and (4) the person's need for treatment is sufficiently compelling to

override any bona fide and legitimate interest of the person in refusing treatment. *Medina*, 705 P.2d at 972-73.

¶ 16    In assessing the fourth *Medina* element, a magistrate must first determine "whether the patient's refusal is bona fide and legitimate." *Id.* at 974. If it is, the magistrate must then determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 17    The evidence supports the magistrate's finding that, even if Kaufman had bona fide and legitimate reasons for her refusal, the need for treatment was sufficiently compelling to override those interests. Dr. Drake opined that the failure to medicate Kaufman would be more harmful than the risks posed by the requested medications. She said that Kaufman had a "very severe and long-standing psychiatric history" and that "when she's noncompliant with medications, she has very significant symptoms that result in pretty erratic and concerning behaviors." Dr. Drake noted that the

medications had several side effects, but she said that Kaufman had tolerated the medications in the past.

¶ 18  Kaufman argues that the magistrate erred because she had a bona fide and legitimate interest in "avoiding serious side effects," many of which were even more dangerous because of her age. For example, she notes that the sedation side effect could increase her risk of falling. But Dr. Drake testified that she did not observe any sedation when Kaufman was on emergency medication and that "her untreated psychiatric condition pose[d] higher and more imminent risk of death" than the side effects. Kaufman also asserts that the medications could exacerbate her preexisting high blood pressure condition. Yet Dr. Drake testified that the medications could only affect Kaufman's blood pressure in an "inadvertent way" if "uncontrolled for years" and therefore presented no immediate risk. The record therefore belies Kaufman's argument.

¶ 19  What's more, Kaufman does not address the other side of the equation — her need for the medications. Indeed, she does not challenge the evidence establishing that her prognosis without treatment was so unfavorable that her preference against medication had to yield to the state's interest in preserving her life

and health. Because we cannot reweigh the evidence, we must reject Kaufman's argument. *See Uwayezuk*, ¶ 57.

¶ 20 In sum, viewed in the light most favorable to the People, we conclude that there was sufficient evidence to establish that Kaufman's need for treatment was sufficiently compelling to override any bona fide and legitimate interest she had in refusing treatment. *See id.* at ¶ 62; *see also R.K.L.*, ¶ 13 ("The testimony of the physician seeking to administer treatment may be sufficient by itself to satisfy" the *Medina* elements.).

III. Disposition

¶ 21 The order is affirmed.

JUDGE BROWN and JUDGE MEIRINK concur.

9