Turene LOMBARD and Pueblo School District # 60, Plaintiffs–Appellants,

v.

COLORADO OUTDOOR EDUCATION CENTER, INC., a Colorado non-profit corporation, d/b/a The Nature Center, and Sanborn Western Camps, Inc., a Colorado non-profit corporation, Defendants–Appellees.

No. 05CA1781.

Colorado Court of Appeals, Div. IV.

Jan. 25, 2007.

Certiorari Denied Sept. 17, 2007.

Law Office of Mickey W. Smith, Mickey W. Smith, Pueblo, Colorado; Gradisar, Trechter, Ripperger, Roth & Croshal, James M. Croshal, Pueblo, Colorado, for Plaintiff–Appellant Turene Lombard.

Law Office of Jeffrey C. Fleischner, Jeffrey C. Fleischner, Greenwood Village, Colorado, for Plaintiff–Appellant Pueblo School District # 60.

Burg Simpson Eldredge Hersh & Jardine, P.C., Diane Vaksdal Smith, David K. TeSelle, Englewood, Colorado, for Defendants–Appellees.

Opinion by Judge ROY.

Plaintiffs, Turene Lombard (the teacher) and Pueblo School District # 60 (the employer), appeal the trial court's summary judgment in favor of defendants, Colorado Outdoor Education Center, Inc., and Sandborn Western Camps, Inc. (collectively, the camp). We affirm.

Plaintiffs commenced this proceeding alleging that the teacher was injured when she slipped and fell from a ladder in her room while attending programs at "The Nature Place," a conference facility, lodge, and camp owned and operated by defendants. The

ladder connected the lower floor of her unit with an upper level loft which provided an additional sleeping area. The employer's interest in this matter is that it has paid, and continues to pay, workers' compensation benefits to the teacher.

The camp filed a motion for summary judgment in which it asserted that there was no evidence that it actually knew or should have known that the ladder was a dangerous condition. The teacher filed a cross-motion for summary judgment. The trial court granted the camp's motion, and this appeal followed.

## I. Facts

The facts are undisputed. On February 26, 2000, the teacher, in the course of her employment, was attending a conference at the camp's facility and was staying in the lodge. Her lodge unit measured twenty feet by twenty feet. The lower level had a closet, kitchenette, and bathroom along one wall, all of which measured approximately ninety square feet. The loft, positioned above the closet, kitchenette, and bathroom, also measured approximately ninety square feet. The loft's floor was seven and one-half feet above the lower level. An attached ladder connected the two levels.

The ladder consisted of eight treads approximately fifteen inches wide and five and one-half inches deep, situated between two two-by-six side rails. The ladder had no hand rails or guard rails and was "leaning" against the wall to which it was attached at a seventy-six degree angle to the floor. There were, however, rails and walls at the top of the ladder with which a person could steady and orient himself or herself before starting down the ladder. The teacher apparently slipped on, or missed, a step as she was descending the ladder, fell to the lower floor, and suffered injuries.

The unit was constructed between 1981 and 1983 by the camp from plans prepared by an "Architectural Designer." The camp obtained a building permit from the county, which approved the plans, conducted the requisite inspections, and issued a certificate of occupancy. The construction was accomplished with the then president of the camp acting as a general contractor and an employee acting as a subcontractor.

The camp submitted the affidavit of an employee stating that, after a thorough review of the records and interviews with current and former employees, there had been no accidents or injuries associated with the use of ladders in the unit in question or the other forty-three similarly designed units in the seventeen years the subject unit had been used and the twenty years since the first of such units was constructed. Nor had the camp been advised by anyone that the ladders constituted a dangerous condition.

Plaintiffs responded with the reports and affidavits of two expert witnesses, both architects, which stated that the ladder violated the provisions of the applicable building code, International Conference of Building Officials, *Uniform Building Code* §§ 3301, 3305 (1976), and, therefore, constituted a dangerous condition. They further opined that a traditional or standard stairway was required. One expressed the additional opinion that the ladder did not comply with American National Standards Institute (ANSI) Standard A14.3–1974 (safety requirements of fixed ladders), and, therefore, constituted a dangerous condition. The ANSI standard is not a law or a regulation.

## II. Issue

The issue presented here is whether a violation of an applicable building code provision on a premises, without more, can constitute a dangerous condition about which the owner actually knew, or should have known, such that the owner is liable under § 13–21–115, C.R.S.2006, for personal injuries sustained by an invitee. Or, put another way, can negligence per se based on the violation of an applicable building code provision in the construction of a premises, without more, establish liability under § 13–21–115? We conclude that it can not.

## III. Standard of Review for Summary Judgment

Summary judgment is appropriate when the pleadings, affidavits, depositions, or admissions establish that there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of such an issue must be resolved against the moving party. *Cung La v. State Farm Auto. Ins. Co.,* 830 P.2d 1007 (Colo.1992). In a case where a party moves for summary judgment on an issue on which that party would not bear the burden of persuasion at trial, the initial burden of production may be satisfied by showing the court that there is an absence of evidence in the record to support the non-moving party's case. *Cont'l Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987). We review a grant of summary judgment de novo. *Vail/Arrowhead, Inc. v. Dist. Court,* 954 P.2d 608 (Colo.1998).

## IV. Premises Liability Statute

When construing statutes, our primary duty is to give effect to the intent of the General Assembly, looking first to the statute's plain language. *In re 2000–2001 Dist. Grand Jury,* 97 P.3d 921 (Colo.2004). If a statute is clear and unambiguous on its face, then we need not look beyond the plain language and must apply the statute as written. *Garhart ex rel. Tinsman v. Columbia/HealthONE, L.L.C.,* 95 P.3d 571 (Colo.2004). In addition, "[w]e construe statutory and constitutional provisions as a whole, giving effect to every word and term contained therein, whenever possible." *Bd. of County Comm'rs v. Vail Assocs., Inc.,* 19 P.3d 1263, 1273 (Colo.2001).

■ Finally, as here, where the interaction of common law and statutory law is at issue, " '[s]tatutes in derogation of the common law must be strictly construed, so that if the legislature wishes to abrogate rights that would otherwise be available under the common law, it must manifest its intent either expressly or by clear implication.' " *Vaughan v. McMinn,* 945 P.2d 404, 408 (Colo.1997) (quoting *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo. 1992)).

The premises liability statute was adopted in direct response to *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971),

for the stated purpose of "protect[ing] land-owners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies set forth in [the same subsection]." Section 13–21–115(1.5)(e), C.R.S. 2006. In *Mile High Fence,* a police officer conducting surveillance late at night stepped into an empty post hole located on private property seven inches off of a paved alley. The officer obtained judgment against the fencing company responsible for constructing the fence, which argued on appeal that the officer was a licensee and, therefore, it did not owe him a duty of care. The supreme court, after concluding that the common law classifications of invitee, licensee, and trespasser were harsh, established one standard of care for possessors of real property. The standard adopted was one of a reasonable landowner in view of the probability or foreseeability of injury to others. And while the classification of the injured party's status could have some bearing on the question of liability, it was only as a factor and was not conclusive.

After the supreme court's holding in *Mile High Fence,* the General Assembly's adoption of the premises liability statute reinstated the common law classifications and established a standard of care applicable to each classification. The current premises liability statute, § 13–21–115, provides in pertinent part that an invitee may only recover from a landowner "damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he *actually knew or should have known.*" Sections 13–21–115(2), (3)(c)(I), C.R.S.2006 (emphasis added). An "invitee" is a person "who enters or remains on the land of another to transact business in which the parties are mutually interested or who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." Section 13–21–115(5)(a), C.R.S.2006.

Our supreme court then held in *Vigil v. Franklin,* 103 P.3d 322 (Colo.2004), that the current premises liability statute abrogated

the common law of landowner duties. In *Vigil*, an injured party sued the property owner after suffering serious injury by diving into an aboveground pool that was four feet deep. The property owner raised the obvious hazard defense, which holds that there is no duty to warn of an obvious hazard. The trial court granted summary judgment to the defendants. The supreme court reversed, stating that the unambiguous language in the premises liability statute indicates the General Assembly's intention to completely occupy the field and supersede the existing law in the area. In addition, the supreme court stated:

> [T]he premises liability statute's classification of the duty owed ... invitees is ... complete and exclusive.... *[A] landowner owes an invitee the duty to exercise reasonable care in protecting against known dangers or those which the landowner should have known. Since these are the "only" situations under which a[n] ... invitee may recover, the statute's definition of landowner duty is complete and exclusive, fully abrogating landowner common law duty principles.* As such, the plain language preempts prior common law theories of liability, and establishes the statute as the sole codification of landowner duties in tort.

*Vigil v. Franklin, supra,* 103 P.3d at 328 (emphasis added).

## V. Negligence Per Se

Negligence per se is a common law principle that the violation of a statute or ordinance establishes a breach of a duty owed to the plaintiff, thus conclusively proving negligence. Generally, persons are presumed to have constructive notice of a statute, ordinance, or code. *See, e.g., Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083 (Colo.1991).

For negligence per se, a plaintiff must show that (1) the defendant violated a statutory standard; (2) this violation proximately caused the injuries at issue; and, (3) the plaintiff "is a member of the class which the statute or ordinance was intended to protect and ... his injuries are of the type it was enacted to prevent." *Foster v. Redd,* 128

P.3d 316, 318 (Colo.App.2005) (quoting *Bittle v. Brunetti,* 750 P.2d 49, 55 (Colo.1988)); *see also Largo Corp. v. Crespin,* 727 P.2d 1098 (Colo.1986).

In the building code context, and prior to the enactment of the current premises liability statute, negligence per se had been entertained and rejected in several cases because one or more of its elements was not present. *See Harless v. Geyer,* 849 P.2d 904 (Colo. App.1992) (installation of linoleum on stairs was not a sufficient modification to require that stairs be brought up to current code); *Comfort v. Rocky Mountain Consultants, Inc.,* 773 P.2d 615 (Colo.App.1989) (ordinance requiring approval of plans for construction of a ditch was not designed to protect passengers of an automobile that left the road and crashed into the ditch); *Iverson v. Solsbery,* 641 P.2d 314 (Colo.App.1982) (cost of bringing residence up to code is not an injury that the code is intended to prevent).

However, in those cases in which the elements of negligence per se have been found to be present, divisions of this court are split on its application to the building code. In *Singleton v. Collins,* 40 Colo.App. 340, 574 P.2d 882 (1978), a plaintiff fell while climbing a stairway in an apartment building. While the stairs violated the building code, the defendant was not the builder of the apartment complex, and the property had been approved for occupancy by the building inspector, thereby indicating compliance with the applicable ordinances. The division concluded that "[u]nder these circumstances there is no reasonable basis for the application of the strict rule of negligence per se, and in the absence of some showing of notice there is no liability." *Singleton v. Collins, supra,* 40 Colo.App. at 342, 574 P.2d at 882.

In *Aetna Casualty & Surety Co. v. Crissy Fowler Lumber Co.,* 687 P.2d 514 (Colo.App. 1984), the defendant fabricated trusses which sagged after a snowfall because they pulled apart at their joints. The plaintiff, having reimbursed the owner for his damages under an insurance contract, brought a subrogation claim against the defendant for the cost of repair. The trial court refused to give the jury an instruction on negligence per se, and the division reversed. Without acknowl-

edging *Singleton v. Collins, supra,* or identifying the provision of the building code in question, the division stated:

> [I]n the instant case, different from *[Iverson v. Solsbery, supra],* there was evidence that an actual failure did occur, that the building itself was damaged, and that such damage would not have occurred had [the defendant] complied with the code. There is no logical reason to exclude the building owner from the class designed to be protected by the building code. And, the damages to the building resulting from the failure of the trusses is obviously a type of injury that the code was designed to prevent. An instruction on negligence per se should have been given.

*Aetna Cas. & Sur. Co. v. Crissy Fowler Lumber Co., supra,* 687 P.2d at 516; *see also Creek v. Nonpareil Inv. Co.,* 66 Colo. 550, 185 P. 473 (1919) (court applied a state statute establishing standards for stairways that specifically permitted personal injury claims based on noncompliance with the statute).

Cases from other jurisdictions decline to apply negligence per se to building code violations because some such defects cannot be discovered upon a reasonable inspection of the premises. *See, e.g., Fitzgerald v. Cestari,* 569 So.2d 1258 (Fla.1990) (defendants were relieved from liability for failing to ascertain that the sliding glass door was not made of safety glass as required by the applicable building code because the lack of safety glass was not discoverable through a reasonable inspection by the owners); *Bills v. Willow Run I Apartments,* 547 N.W.2d 693 (Minn. 1996) (the owner reasonably relied on the inspection reports of a state building inspector and thus could not be expected to reinspect the property); *Sikora v. Wenzel,* 88 Ohio St.3d 493, 727 N.E.2d 1277 (2000) (the property owner had no way of knowing that a deck was improperly designed).

## VI. Analysis and Holding

■ Here, the parties agree that the teacher was an invitee. The standard of care contained in the premises liability statute for invitees is "the unreasonable failure to exercise reasonable care to protect against dangers of which [the landowner] actually knew or should have known." Section 13–21–115(3)(c)(I). The phrase "unreasonable failure to exercise reasonable care" appears to be redundant in that the failure to exercise reasonable care is, almost by definition, unreasonable. However, the phrase makes the statement more emphatic and may serve to narrow those dangerous conditions about which a landowner "knew or should have known." In addition, the General Assembly did not define "should have known." However, by recognizing that its purpose in revising the premises liability statute was "to protect landowners from liability in some circumstances when they were not protected at common law," at a minimum "should have known" provides the same, if not higher, protection for landowners than existed prior to *Mile High Fence v. Radovich.* Section 13–21–115(1.5)(e).

Based on the definition of an invitee, we conclude here that the common law principle of negligence per se is abrogated in the premises liability context by § 13–21–115. As previously described, our supreme court in *Vigil v. Franklin, supra,* held that the premises liability statute's classification of a duty owed to an invitee is complete and exclusive and fully abrogates landowner common law duty principles. In addition, there is a logical disconnect between the standard contained in the premises liability statute and the principle of negligence per se.

Negligence per se is premised on constructive, not actual, notice of the requirements of a statute, ordinance, code, or regulation. *See, e.g., Hecla Min. Co. v. New Hampshire Ins. Co., supra.* "Constructive notice" is defined as "[n]otice arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of . . .; notice presumed by law to have been acquired by a person and thus imputed to that person." *Black's Law Dictionary* 1090 (8th ed.2004). "Constructive knowledge" is defined as "[k]nowledge that one using reasonable care or diligence should have, and therefore is attributed by law to a given person." *Black's, supra,* at 888. "Actual knowledge" is defined as "[d]irect and clear knowledge as distinguished from constructive knowledge." *Black's, supra,* at 888.

The phrase "should have known" has historically been used in conjunction with "know" or "knowledge" to create an objective standard to avoid denial of apparent facts or intentionally induced ignorance. A division of this court in *Sulca v. Allstate Insurance Co.*, 77 P.3d 897 (Colo.App.2003), citing a previous edition of *Black's Law Dictionary*, stated:

> Dictionaries define "knowledge" as "an awareness or an understanding" and "actual knowledge" as "[an awareness or an understanding] of such information as would lead a reasonable person to inquire further." *E.g., Black's Law Dictionary* 876 (7th ed.1999); *Webster's Third New International Dictionary* 1252 (1986) (defining "knowledge" as "the act, fact, or state of knowing; ... awareness [or]understanding").
>
> Most statutes of limitations require that a plaintiff know or, after the exercise of reasonable diligence, should have known of the triggering event or circumstance.
>
> The requirement that a plaintiff use due diligence in discovering the relevant circumstance or event imposes an objective standard and does not reward denial or self-induced ignorance.

*Sulca v. Allstate Ins. Co., supra,* 77 P.3d at 900 (additional citations omitted).

In our view, it is improper to equate "actually knew or should have known" with "constructive notice" or "constructive knowledge." The former type of knowledge is actual and direct, while the latter two are presumed. This disconnect, coupled with our supreme court's holding in *Vigil v. Franklin, supra,* that the premises liability statute abrogates the common law, leads us to conclude that negligence per se is not a viable theory upon which to establish a breach of a duty in a premises liability case.

■ Moreover, the building code, standing alone, is a complex document which contains only a portion of the requirements applicable to the construction of a building. Other requirements are contained in, among perhaps others, equally complex electrical, mechanical, plumbing, and fire codes. The interpretation and application of these codes, individually and collectively, is not an altogether simple matter and is, in our view, beyond the purview of the general citizenry, as it is beyond ours. Therefore, knowledge of the provisions of the building and related codes and their application to a particular structure should not be presumed, and it would be sophistry to conclude that landowners in general know or should know that the conditions occasioned by a violation of them would constitute a dangerous condition.

■ Moreover, even if we determined that negligence per se was not abrogated by the premises liability statute, it is not a doctrine of universal application, and we would be disposed to follow *Singleton v. Collins, supra,* a pre-premises liability statute case, because there, as here, the property had been approved by a building inspector for occupancy, thus indicating compliance with the applicable ordinances.

■ Finally, plaintiffs argue that, because the application for the building permit was made by the camp, the application was signed by an officer of the corporation, and the work was contracted to an employee, the camp had actual knowledge of the dangerous condition because it had actual knowledge of the building code. This argument is predicated on the "agreement" set forth on the building permit application, which states, in part: "I, the undersigned, do hereby agree to perform the work herein and to conform to all requirements of the Teller County Building Code for construction within this jurisdiction."

In our view, an "agreement" made by the landowner in an application for a building permit to comply with the applicable building code does not support the proposition that the landowner was aware of the applicable provisions of the building code and actually knew or should have known that the ladder violated the building code and, therefore, constituted a dangerous condition within the meaning of the premises liability statute.

Therefore, we conclude that the trial court did not err in granting summary judgment on plaintiffs' premises liability claim based on their contention that violation of the building code established negligence per se.

## VII. Camp's Admission Against Interest

█ Plaintiffs assert that the trial court erred by refusing to consider the camp's admission that the condition created by the ladder was open and obvious. We disagree.

█ Where the defendant files a pleading that is subsequently abandoned or superseded by amendment, the original pleading is admissible against the pleader in the proceedings in which it was filed, as evidence of admissions against interest contained therein. W.R. Habeeb, Annotation, *Admissibility in Evidence of Withdrawn, Superseded, Amended, or Abandoned Pleading as Containing Admissions Against Interest*, 52 A.L.R.2d 516 § 5[a] (1957); *see also Burris v. Anderson*, 27 Colo. 506, 62 P. 362 (1900). However, the alleged admission must be unequivocal. *Anderson v. Watson*, 929 P.2d 6 (Colo.App.1996).

Here, the camp's eleventh defense to plaintiffs' complaint stated that "Plaintiffs' injuries occurred as the result of an open and obvious condition." By this statement, the camp asserted that the existence of the ladder was open and obvious; it did not admit that the ladder was faulty or constituted a dangerous condition. Thus, the trial court correctly refused to consider this statement as an admission of a dangerous condition under the premises liability statute.

The judgment is affirmed.

Judge LOEB and Judge ROMÁN concur.