# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: February 23, 2015

**NO. 33,517**

**CITIZEN ACTION NEW MEXICO,**

Appellant,

v.

**NEW MEXICO ENVIRONMENT DEPARTMENT and SANDIA CORPORATION,**

Appellees,

**APPEAL FROM THE NEW MEXICO ENVIRONMENT DEPARTMENT
Tom Blaine, Director**

Robert P. McNeill
Albuquerque, NM

for Appellant

New Mexico Environment Department
William G. Grantham, Special Assistant Attorney General
John B. Verheul, Special Assistant Attorney General
Santa Fe, NM

for Appellee New Mexico Environment Department

Sandia Corporation
Amy J. Blumberg
Albuquerque, NM

Montgomery & Andrews, P.A.
Jeffrey J. Wechsler
Louis W. Rose
Lara Katz
Santa Fe, NM

for Appellee Sandia Corporation

**_____OPINION**

**SUTIN, Judge.**

{1}     Appellant Citizen Action New Mexico appeals from a January 8, 2014, letter reflecting the New Mexico Environment Department's decision to approve the Sandia National Laboratories Long-Term Monitoring and Maintenance Plan for the Mixed Waste Landfill (the long-term plan).  Pursuant to NMSA 1978, Section 74-4-14 (1992), Citizen Action appeals the Department's decision directly to this Court.

{2}     Citizen Action argues that the Department's approval of the long-term plan in the January 8, 2014, letter was unlawful because the long-term plan disregarded a condition of a 2005 final order previously issued by the Secretary of the Department. That condition required Sandia to submit a report every five years, the first of which, according to Citizen Action, was due in May 2010.  The purpose for the five-year report was to re-evaluate the feasibility of excavation of the mixed-waste landfill and to analyze the continued effectiveness of a Department-ordered remedy.  Citizen Action argues further that by approving the long-term plan, the Department unlawfully modified Sandia's hazardous waste permit (the permit) by changing particular aspects of the groundwater-monitoring network.  The Department and Sandia filed answer briefs refuting Citizen Action's substantive arguments but also arguing that the appeal is untimely.

{3} In a letter issued and made publicly available on October 14, 2011, the Department required Sandia's first five-year report to be filed five years after the Department approved the long-term plan. Because we conclude that the October 2011 letter constituted a final agency action regarding the time-line of the five-year report, we hold that Citizen Action's appeal is untimely as to the five-year report issue, and we do not consider the merits of the appeal. Further, because it is unsupported by the record, we reject Citizen Action's argument that the long-term plan, approved in the Department's January 2014 letter, effectively modified the permit in regard to the groundwater-monitoring network. We hold that Citizen Action's appeal provides no basis for reversal, and we affirm the Department's approval of the long-term plan.

**BACKGROUND**

{4} In *Citizen Action v. Sandia Corporation*, this Court affirmed the final order issued in 2005 (the 2005 order) by the Secretary of the Department granting Sandia's request for a Class 3 permit modification for corrective measures for the mixed-waste landfill located at Sandia. 2008-NMCA-031, ¶¶ 1-2, 9, 143 N.M. 620, 179 P.3d 1228. In *Citizen Action*, a case involving the same parties that are involved in this case, we provided historical and factual background information related to Sandia, to the mixed-waste landfill, and to the process by which the Secretary selected the

2

corrective measures (hereafter, the remedy) to be employed at the mixed-waste landfill and to the 2005 order. *Id.* ¶¶ 2-9. We do not reiterate that background information here. Instead, we limit our background discussion to the procedural developments that have since occurred, and we only discuss facts that were recited in *Citizen Action* when necessary for context in this appeal.

{5} The 2005 order approving a permit modification mandated that the remedy would be a vegetative soil cover with a bio-intrusion barrier. The 2005 order and the corresponding permit modification also mandated a number of substantive conditions including the following, among others. Within 180 days of the 2005 order, Sandia was required to submit a Corrective Measures Implementation Plan (CMI plan) relating to the mixed-waste landfill for the Department's approval detailing the design, construction, operation, maintenance, and performance monitoring for the remedy and a schedule for implementation including, among other things, a "comprehensive fate and transport model that studies and predicts future movement of contaminants in the landfill and whether they will eventually move further down the vadose zone and/or to groundwater[.]" Within 180 days after the remedy was implemented, Sandia was to submit a Corrective Measures Implementation Report (CMI report) for the Department's approval. And within 180 days of the Department's approval of the CMI report, Sandia was to submit its long-term plan,

which was approved by the January 2014 letter from which Citizen Action appeals, for the Department's approval. The long-term plan was to include "all necessary physical and institutional controls to be implemented in the future" and "contingency procedures that must be implemented by [Sandia] if the remedy . . . fails to be protective of human health and the environment." Before approving the CMI plan, the CMI report, or the long-term plan, the Department and Sandia were to provide a process by which interested members of the public could review and comment upon them, and the Department was required to review, consider, and respond to those comments.

{6}     Additionally, the 2005 order required Sandia to "prepare a report every [five] years, re-evaluating the feasibility of excavation and analyzing the continued effectiveness of the selected remedy" (the five-year report). The five-year report was required to "include a review of the documents, monitoring reports and any other pertinent data, and anything additional required by [the Department]." In each five-year report, Sandia was also required to "update the fate and transport model for the site with current data, and re-evaluate any likelihood of contaminants reaching groundwater." Further, the five-year report was required to "detail all efforts to ensure any future releases or movement of contaminants are detected and addressed well before any effect on groundwater or increased risk to public health or the

4

environment." Before each five-year report was approved by the Department, it and its supporting information were required to be readily available to the public, and the Department was to take public comments on the report to which it would respond in its final approval. The 2005 order did not specify when the first five-year report was due nor did it specify what action or decision would trigger the commencement of the five-year reporting period.

{7} Sandia submitted a CMI plan in November 2005, and the Department approved it in December 2008. The remedy, vegetative soil cover with bio-intrusion barrier, was installed in 2009, and in January 2010 the Department of Energy (DOE) on behalf of Sandia timely submitted a CMI report. After the requisite review and comment period, the Department approved the CMI report in its letter dated October 14, 2011. The approval letter triggered the requirement that Sandia submit its long-term plan within 180 days. In addition to notifying Sandia that it was required to submit the long-term plan within 180 days, the October 14, 2011, letter stated that: "Upon [the Department's] approval of the [long-term plan], the first five-year period for re-evaluating the feasibility of excavation and analyzing the effectiveness of the remedy, required under the [2005 order], will begin. This will allow for monitoring data to be acquired under the [long-term plan] to be available for the purpose of

conducting the evaluation." The October 14, 2011, letter was posted on the Department's website and placed in Sandia's publicly accessible file.

{8}     Sandia originally submitted a long-term plan on September 25, 2007, but that version was withdrawn and, within 180 days of the Department's approval of the CMI report, Sandia re-submitted its long-term plan on March 23, 2012. It is the March 23, 2012, version of the long-term plan that is at issue in this appeal.

{9}     The stated purpose of the long-term plan "is to ensure that the [mixed-waste landfill], with the [remedy in place], remains protective of human health and the environment." In addition to detailing the scientific and technical means by which its purpose will be met, the long-term plan addressed the requirement of the five-year report, stating in relevant part that:

> [t]he first five-year re[-]evaluation period will begin upon [the Department's] approval of this [mixed-waste landfill long-term plan] (Kieling October 2011). The first [five-year report] will be submitted to [the Department] five years after approval of the [long-term plan] and include monitoring results for the first four years under the [long-term plan] to allow time to prepare and submit the report.

"Kieling October 2011" within the parentheses is a reference to the October 14, 2011, letter approving the CMI report that was signed by John E. Kieling, Acting Chief of the Department's Hazardous Waste Bureau.

{10}     In September 2012, the Department issued a notice of public comment period and public dialogue meeting regarding the long-term plan. In October 2012, the

6

Department, assisted by the DOE and Sandia, held a public meeting at which it provided information on the long-term plan and answered questions. The Department also conducted a 150-day public comment period and provided responses to the public's comments. After these proceedings, the Department issued its letter approving the long-term plan on January 8, 2014.

{11} Citizen Action appeals the Department's approval of the long-term plan arguing, primarily, that the Department used the approval of the long-term plan to unlawfully "circumvent," "disregard," "delay," "ignor[e]," and modify the provision of the 2005 order that, in Citizen Action's view, "explicit[ly]" required Sandia to file the first five-year report on May 26, 2010, five years after the 2005 order. Citizen Action also raises what we construe to be a second issue, that is, that the long-term plan unlawfully modified the permit by changing the number, location, and depth of "upgradient and downgradient" wells of the groundwater-monitoring network.

{12} Because we conclude that Citizen Action failed to timely appeal from the October 2011 letter, in which the Department made the at-issue determination regarding the five-year reporting period, we decline to consider the propriety of the determination. Citizen Action's argument that the long-term plan modified the permit as it pertained to the groundwater-monitoring network is not supported by the record, and we affirm the Department's approval of the long-term plan in that regard.

**DISCUSSION**

**The Timeliness of the Appeal and the Ambiguous Due Date of the Five-Year Report in the 2005 Order**

{13}	Sandia and the Department argue that the 2005 order was ambiguous as to when the first five-year report was due and that Citizen Action waived its right to raise the issue by failing to request clarification regarding the five-year report due date in the administrative proceedings related to the 2005 order or in the appeal from the 2005 order. Alternatively, they argue that because the Department's October 2011 letter reflected the Department's final determination regarding when the first five-year report was due, by failing to appeal from the October 2011 letter, Citizen Action waived its right to appeal that determination. Sandia and the Department argue that Citizen Action's appeal is untimely and should not be considered. We review issues of waiver and timeliness de novo. *Clinesmith v Temmerman*, 2013-NMCA-024, ¶ 13, 298 P.3d 458 (stating that timeliness issues are reviewed de novo); *Concerned Residents of Santa Fe N., Inc. v. Santa Fe Estates, Inc.*, 2008-NMCA-042, ¶ 22, 143 N.M. 811, 182 P.3d 794 (stating that a waiver issue is reviewed de novo).

{14}	Citizen Action argues that the 2005 order unambiguously required the first five-year report to be submitted by May 26, 2010, five years after the date of the 2005 order. The obvious implication of this argument is that because the 2005 order was unambiguous, Citizen Action would have had no reason to request clarification

8

regarding the due date of the first five-year report during the administrative proceedings or the appeal related to the 2005 order. Further, Citizen Action argues that the Department's October 2011 letter "did not constitute adequate notice to a party that might wish to appeal an administrative decision."

{15} As noted in the background of this Opinion, the 2005 order did not specify when the first five-year report was due, nor did it identify the action that would trigger the five-year reporting period. The 2005 order's silence on the matter of when Sandia was required to submit its first five-year report led the Department to conclude that the order was ambiguous in regard to the five-year reporting period, and it led Citizen Action to conclude that the first five-year report was due within five years of the 2005 order. For the purpose of addressing the timeliness of the appeal, we assume without deciding that these disparate interpretations of the 2005 order were both reasonable and that the 2005 order was therefore ambiguous as to when the first five-year report was due. *Lawton v. Schwartz*, 2013-NMCA-086, ¶ 21, 308 P.3d 1033 (recognizing that "an ambiguity is created when provisions are reasonably and fairly susceptible [of] two constructions" (omission, internal quotation marks, and citation omitted)); *cf. Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 48, 123 N.M. 752, 945 P.2d 970 (recognizing that silence in a contract created an ambiguity).

{16} Because the 2005 order could reasonably have led Citizen Action to have understood that the first five-year report was unequivocally due in 2010, it would be unfair for this Court to hold that Citizen Action was required, in the proceedings related to the 2005 order, to request clarification of an ambiguity that it did not perceive. Accordingly, we reject the Department's and Sandia's argument that Citizen Action waived or otherwise forewent its opportunity to raise the issue of the five-year report's due date by not addressing it in the proceedings related to the 2005 order, including the appeal. Nevertheless, we conclude that because Citizen Action failed to appeal from the Department's October 2011 letter, its appeal related to the due date of the five-year report is untimely.

{17} Section 74-4-14(A) provides that "[a]ny person who is or may be affected by any final administrative action . . . may appeal to the [C]ourt of [A]ppeals for further relief within thirty days after the action." The phrase "final administrative action" is not defined. *See generally* NMSA 1978, § 74-4-3 (2010) (providing definitions of terms used in the Hazardous Waste Act, NMSA 1978, §§ 74-4-1 to -14 (1977, as amended through 2010)). Therefore, we determine finality "based on pragmatic consideration of the matters at issue and analysis of whether the administrative body has in fact finally resolved the issues." *N.M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n*, 1991-NMSC-018, ¶¶ 1, 24, 111 N.M. 622, 808 P.2d 592 (stating the

10

standard used to determine finality in the context of a direct appeal to our Supreme Court from an agency decision). Our "pragmatic consideration" of the administrative agency's action includes considering, among other things, "whether certain issues will be revisited" by the agency and whether the agency will engage in "further fact finding" that "will elicit more evidence illuminating the issues[.]" *Id.* ¶¶ 24, 26.

{18} The Department's October 2011 letter does not support an inference that the Department intended to further consider any matter as to the approval of the CMI report, including the issue as to the timing of the long-term plan and the five-year report. *See id.* ¶ 26. The October 2011 letter unequivocally reflected the Department's determination that the five-year reporting period "will begin" upon the Department's approval of the long-term plan. *See id.* (stating that one factor that weighs heavily in considering whether an agency decision is final is what the agency has said it "will do"). It also provided an explanation for its decision, stating that commencing the five-year reporting period upon approval of the long-term plan would "allow for monitoring data to be acquired under the [long-term plan] to be available for the purpose of conducting the [five-year] evaluation[,]" thereby reflecting that the Department's decision was based, at least in part, on its consideration of facts relevant to the question of when the five-year report should be due. *Cf. Paule v. Santa Fe Cnty. Bd. of Cnty. Comm'rs*, 2005-NMSC-021, ¶ 9, 138

11

N.M. 82, 117 P.3d 240 (stating that a final order is characterized by a resolution of factual issues).

{19} In sum, the Department's October 2011 letter reflected that it had considered the relevant facts and determined that the five-year report would be due five years after the long-term plan was approved. The Department's October 2011 letter did not suggest that the matter of the due date of the first five-year report would be revisited or subject to change based upon previously unconsidered facts or evidence. As such, we conclude that it constituted the Department's "final administrative action" in that regard. Because we conclude that the Department's October 2011 letter reflected its final decision regarding when the five-year reporting period would commence, the thirty-day time frame within which Citizen Action could have appealed that decision has long expired. *See* § 74-4-14(A) (stating that a final administrative action may be appealed within thirty days after the action).

{20} Citizen Action attempts to overcome its failure to timely appeal from the October 2011 letter by reasoning that because Sandia referenced the October 2011 decision in its long-term plan, the Department's January 2014 letter approving the long-term plan constituted its "final administrative action" regarding the due date of the five-year report. We are not persuaded by Citizen Action's reasoning.

{21}     Unlike the October 2011 letter approving the CMI report and also stating the Department's determination that the five-year reporting period would commence upon the Department's approval of the long-term plan, the Department's January 2014 letter contained no reference to the five-year report, nor did it reflect that the Department had undertaken any further decision-making in regard to the due date of the five-year report.  To the extent that the Department's January 2014 letter implicitly approved Sandia's stated intention to submit the five-year report within the time-frame stated in the October 2011 letter, its approval was directed at Sandia's plan to implement the October 2011 action; it was not itself an appealable action on the question of the five-year report. *See Chem. Weapons Working Grp., Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1494 (10th Cir. 1997) (recognizing the distinction between a final agency action and the implementation of the decision reflected in the final agency action).  We reject Citizen Action's claim that its appeal of the Department's decision to require the first five-year report five years after its approval of the long-term plan was appropriately taken from the Department's approval of the long-term plan.

{22}     Further, in responding to the Department and Sandia regarding the timeliness of its appeal, Citizen Action claims that it did not have adequate notice of the October 2011 letter.  Specifically, Citizen Action states that it was not aware of the

13

Department's decision regarding the commencement of the five-year reporting period until either March 2012, when Sandia submitted the long-term plan that noted that "[t]he first five-year . . . period will begin upon [the Department's] approval of this [long-term plan,]" or May 2012, when Citizen Action obtained a copy of the Department's October 2011 letter via an Inspection of Public Records Act request. Citizen Action's lack-of-notice argument is unpersuasive in the context of this case.

{23}     Pursuant to the terms of the 2005 order, the public's continued access to information and ability to participate in future decisions regarding the remedy was assured, among other ways, by requiring Sandia and the Department to "provide a convenient method for the public to review . . . major documents [including the CMI plan, the CMI report, and the long-term plan]" related to the mixed-waste landfill "including but not limited to posting the documents on a publicly accessible website." *Citizen Action*, 2008-NMCA-031, ¶ 38 (alterations, internal quotation marks, and citation omitted).  The Department complied with this directive when it issued its October 2011 letter by posting the letter to its publicly available website and in Sandia's publicly accessible file.  *See*  http://www.nmenv.state.nm.us/HWB/ snlperm.html#MWLCMIReport (last visited January 23, 2015). Citizen Action does not argue or provide authority to support the proposition that the Department was

14

required to provide notice of its October 2011 letter by doing anything more than posting it on the publicly accessible website.

{24} We conclude that, as a result of the letter having been posted on the Department's website and in Sandia's publicly accessible file, Citizen Action was or at least should have been aware of the October 2011 approval letter at the time that it was issued. *See United States v. Bank of America*, 303 F.R.D 114, 119 (D.D.C. 2014) (holding that an appellant had actual or constructive notice of a judgment for purposes of timely appealing it where the judgment was available via the court's publicly accessible data base and via a website especially set up for the settlement). Even were we to give Citizen Action the benefit of the doubt and assume that, owing to circumstances beyond its control, Citizen Action did not learn of the Department's decision until March or May 2012, Citizen Action presents no justification for not having filed an appeal immediately thereafter. *See Clinesmith*, 2013-NMCA-024, ¶ 37 (recognizing that the appellate court may review an untimely appeal, "but only in the most unusual circumstances beyond the control of the parties" (alteration, internal quotation marks, and citation omitted)).

{25} Having failed to timely appeal from the October 2011 letter within thirty days of its publication, or at the very least, within thirty days of having learned of the decision in March or May 2012, Citizen Action's appeal filed on February 3, 2014,

is untimely. Accordingly, we decline to consider it. *See id.* ¶ 43 (declining to review an appeal that was filed over five years after the at-issue order was entered).

**The Groundwater-Monitoring Issue**

{26}    Citizen Action claims, without citation to the record to support its assertion, that "[t]he March 2012 [long-term plan] changed the number, location[,] and depth of upgradient and downgradient wells of the groundwater monitoring network" thereby modifying the permit. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 (recognizing that the appellate court "has no duty to review an argument that is not adequately developed" and is unsupported by citation to the record). Sandia argues that Citizen Action's argument lacks merit because "the [p]ermit . . . does not include specific monitoring requirements such as the number, location, and depth of wells." In support of its argument, Sandia points to the relevant section of the permit, as modified according to the 2005 order. Because Citizen Action fails to respond to this argument or to provide record support for its argument in its reply, we conclude that Citizen Action concedes the point that Sandia has made. *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (explaining that failure to respond in a reply brief to arguments raised in an answer brief constitutes a concession of the matter). This issue provides no basis for reversal.

**CONCLUSION**

{27}     Because Citizen Action has demonstrated no grounds for reversal, we affirm the Department's decision reflected in its January 2014 letter to approve the long-term plan.

{28}     **IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____

**MICHAEL D. BUSTAMANTE, Judge**


_____

**CYNTHIA A. FRY, Judge**

17